Argued and submitted September 18, 1995, affirmed July 3, 1996

In the Matter of the Compensation of
Marvin Taylor, Claimant.

Marvin TAYLOR,
*Petitioner,*

*v.*

CABAX SAW MILL
and Industrial Indemnity,
*Respondents.*

(94-00753; CA A87505)

919 P2d 527

Susan L. Frank argued the cause for petitioner. With her on the brief was Pozzi Wilson Atchison.

John E. Snarskis argued the cause and filed the brief for respondents.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Claimant petitions for review of an order of the Workers' Compensation Board (Board) upholding Industrial Indemnity's (carrier) denial of medical services benefits. We affirm.

The facts are not in dispute. Claimant sustained a compensable injury in 1967, and his treatment included chiropractic procedures. On December 1, 1987, carrier refused to pay for more than two chiropractic treatments per month. On June 20, 1988, the parties entered into a disputed claims settlement (DCS), which provided, among other things:

> "The carrier's denial limiting claimant's medical treatment to two times per month shall remain valid and in full force and effect unless and until claimant should establish that his accepted condition has worsened to reasonably require either hospitalization or in-patient or out-patient surgical procedures * * *. Treatments in excess of two times per month are therefore per se unreasonable unless claimant should establish such qualification for reopening under these rules of the Board's Own Motion jurisdiction."

In 1990, the Oregon legislature amended the workers' compensation statutes, and those amendments included a new provision requiring that the availability of medical services benefits is to be determined, in part, based on whether a worker and his or her physician are members of a managed care organization (MCO). ORS 656.245.[1] The amendments apply to this case. *Id.*, Or Laws 1990, ch 2, § 54; *Carlson v. Valley Mechanical*, 115 Or App 371, 374-75, 838 P2d 637 (1992), *rev den* 315 Or 311 (1993); *SAIF v. Herron*, 114 Or App 64, 836 P2d 131, *rev den* 315 Or 271 (1992).

On September 21, 1993, claimant saw a neurosurgeon, Dr. Dunn, who was not subject to an MCO contract. Carrier advised claimant that he was subject to an MCO contract, and that, under ORS 656.245, to receive medical services benefits, he must be treated by an MCO physician. Claimant requested a hearing on the denial, arguing that the 1988 DCS, in effect, guaranteed him two medical treatments

---

[1] Or Laws 1990, ch 2, § 10 (Spec Sess).

per month, regardless of whether the treating physician was an MCO member. The administrative law judge (ALJ) upheld the denial:

> "Carrier has denied Dr. Dunn's treatment * * * because he is not an MCO member. Membership is a prerequisite to compensability.
>
> "* * * * *
>
> "Contrary to claimant's position * * * I do not agree that the 1988 stipulation forever binds carrier to provide at least two treatments per month without regard to compensability. The stipulation only deals with the issue of reasonableness and necessity.
>
> "On the merits, the 1990 Legislature retroactively changed the definition of compensability insofar as treatment under ORS 656.245 is concerned. Under the new statute, until Dr. Dunn becomes an MCO physician, his treatment is not compensable."

(Citations omitted.) Claimant requested Board review. The Board adopted the opinion of the ALJ and upheld the denial.

On review, claimant argues that the Board erred, because the language of the DCS

> "clearly demonstrates that the parties agreed that claimant was entitled to two medical treatments per month with no limitation on his choice of physician."

Claimant identifies no language in the DCS stating such an entitlement; his argument instead appears to be based on the fact that the language does not say anything to the contrary. According to claimant, the DCS contains no limitations on his choice of doctors, and allowing the statute to apply retroactively to him would unfairly amount to rewriting the terms of the agreement. Carrier argues that the DCS says nothing at all about claimant being entitled to any particular treatment; it only establishes the reasonableness of its denial of any treatments in excess of two per month.

■■ We review the Board's construction of a DCS as we would its construction of any written agreement, applying standard rules of contract construction. *Trevitts v. Hoffman-Marmolejo*, 138 Or App 455, 459, 909 P2d 187 (1996); *see*

*Good Samaritan Hospital v. Stoddard,* 126 Or App 69, 72, 867 P2d 543, *rev den* 319 Or 572 (1994). Generally, that review consists of two steps, beginning with a determination whether, as a matter of law, the terms of the agreement are ambiguous and, if so, proceeding to a determination of the "objectively reasonable construction of the terms" in the light of the parties' intentions and other extrinsic evidence. *Williams v. Wise,* 139 Or App 276, 281, 911 P2d 1261 (1996). If we proceed to the second step in the analysis, we review the factfinders' determination of the parties' intentions for any evidence. *See Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 643, 576 P2d 1244 (1978); *Williams,* 139 Or App at 279; *Trevitts,* 138 Or App at 459-60.

■    In this case, we conclude that the Board correctly determined that the terms of the 1988 DCS are unambiguous and do not create an entitlement to treatment from the medical services provider of claimant's choice. The DCS addresses only one issue: the reasonableness of carrier's denial of more than two treatments per month. The agreement does not, by its terms, guarantee claimant two treatments, regardless of who provides them. In other words, even assuming that the DCS entitles claimant to two medical treatments per month, those services must otherwise be compensable. Under the applicable statute, to be compensable, claimant's treatment must be provided within the MCO contracted by the carrier and the terms of that contract. ORS 656.245(4). Enforcement of the statute does not alter the terms of the DCS; the agreement does not address that issue. Because Dunn was not an MCO member, the Board did not err in upholding the carrier's denial.

Affirmed.